UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RUNDELL FLETCHER,

Petitioner,

v.

CONNIE ROERICH, Warden,
Minnesota Correctional Facility,
Fairbault, MN.

Respondent.

CIVIL NO. 01-1735 (JMR/JMM)

REPORT AND RECOMMENDATION

The above matter is before the undersigned upon a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. Petitioner appears pro se; Linda Kay Jenny Esq., Assistant Hennepin County appears on behalf of Respondent. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that a Writ of Habeas Corpus be denied and the Petition [Docket No. 1] be dismissed.

**Background**

Petitioner was convicted on state charges of conspiracy to commit first degree murder and conspiracy to commit first degree assault for arranging to have an undercover officer (herein "Sam") either assault or kill his former girlfriend (herein "R.A."). Petitioner was sentenced to a 180 month term which he is currently serving at the Minnesota Correctional Facility in Fairbault, Minnesota. On July 11, 1997 Petitioner appealed his conviction to the Minnesota Court of Appeals. The Court of Appeals affirmed

FILED JAN 18 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Petitioner's conviction and sentence, and Minnesota Supreme Court denied review. Fletcher v. State, WL 1341392 (Minn. Ct. App., Sept. 19, 2000). pet. for rev. den. (Minn., Nov. 21, 2000).

With this Petition for a Writ of Habeas Corpus, Petitioner seeks release from state custody on several grounds, which we consider separately.

## I. Standard for Habeas Relief Under 28 U.S.C. § 2254

Habeas Corpus is a limited federal remedy available to state prisoners who challenge the validity of their convictions and or detention based on federal constitutional grounds. Federal courts do not function as appellate courts to review matters within the jurisdiction of the state, or to review rulings and decisions of state trial and appellate courts. See Autry v. Estelle, 464 U.S. 1 (1983). Rather, the court only determines whether the proceedings in the state court amount to a violation of federal constitutional rights. See Williams v. Taylor, 120 S.Ct 1479, 1498 (2000)(federal court asks whether state court's application of clearly established federal law was unreasonable); see also 28 U.S.C. 2254(e).

Not all alleged federal constitutional errors are reviewable by the federal court pursuant to a writ for habeas relief. The Supreme Court has limited habeas review to those case in which the alleged constitutional error is of substantial magnitude. In Brecht v. Abrahamson, 507 U.S. 619 (1993) the Court held that habeas relief was available only if the "error 'had substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 623 (citing Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Thus a petitioner's access to the federal courts as a means to seek review of a state

court's decision is limited to those instances involving a substantial federal constitutional error that influenced the jury's determination of guilt.

The scope of federal judicial review is governed by 28 U.S.C. § 2254 of the Anti-Terrorism and Effective Death Penalty Act of 1996. Section 2254 limits federal judicial review of a petition for a writ of habeas corpus submitted by a prisoner in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The standard for granting a Petition for a Writ of Habeas Corpus is codified by 28 U.S.C. § 2254(d)(1) and (2), which provides that habeas relief is not available unless the state adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" language of § 2254(d)(1), the writ may be granted if the state court arrived at a conclusion adverse to that reached by the Supreme Court on a question of law or if it decided a case differently from a case decided by the Supreme Court with materially indistinguishable facts. See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000)(citing Williams v. Taylor, 529 U.S. 362 (2000)). Under the "unreasonable application" phrase is § 2254 (d)(1), a federal habeas court may grant the writ if the state court identified the correct governing legal principle but unreasonably

applied that principle to the facts of the prisoner's case. Id. We "must deny a writ--even if we disagree with the state court's decision--so long as that decision is reasonable in view of all the circumstances." May v. Iowa, 251 F.3d 713, 716 (8th Cir. May, 16 2001)(citing Williams, 529 U.S. at 409-413).

In reviewing factual decisions we are guided by the language of § 2284(d)(2) and are further limited by the principle that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The presumption of correctness applies to the factual findings of state appeals courts as well as those of trial courts. See Sumner v. Mata, 449 U.S. 539, 547 (1981) ("Section 2254(d) by its terms . . . applies to factual determinations made by state courts, whether the court be a trial court or an appellate court"); Alston v. Redman, 34 F.3d 1237, 1242 (3d Cir. 1994) ("There is a presumption that historical fact-finding by a state court, whether trial or appellate, is correct."), cert. denied, 513 U.S. 1160 (1995); Steele v. Young, 11 F.3d 1518, 1520 n.2 (10th Cir. 1993) ("Explicit and implicit findings of historical facts by the state trial and appellate courts are presumed correct.").

In rare cases an evidentiary hearing may be held. To receive such a hearing the applicant must show that the claim relies on a new rule of constitutional law, made retroactive by the U.S. Supreme Court, or relies on a factual predicate that could not have been previously discovered through the exercise of due diligence. In the event the applicant alleges a new or different factual foundation, he or she must not only establish the facts by clear and convincing evidence, but it must also be shown that, but for the

constitutional error, no reasonable fact finder would have found the applicant guilty. 28 U.S.C. § 2254(e)(2).

## II. Issues Raised by Petitioner

Having the above standards in mind, we consider each of the claims raised by Petitioner.

### A. Jury Verdict

Petitioner contends that the state failed to obtain a unanimous jury verdict against him on the crimes with which he was charged. Petitioner alleges that the Complaint initially charged him with merely conspiring to assault his former girlfriend (named "R.A.") and with conspiring to murder R.A.'s new boyfriend, but that when the state learned R.A. had no new boyfriend, the prosecutor changed themes and began arguing that R.A. herself was the target of the murder conspiracy. In furtherance of the state's strategy to change theme's, Petitioner contends that the prosecutor neglected to specify the intended target of the murder conspiracy during closing arguments. Based on these facts Petitioner argues that he was denied a unanimous jury verdict on the charge of conspiring to commit the murder of R.A.

This Court is procedurally barred from reaching the merits of Petitioner's claim because he failed to raise the present issue with the postconviction court. Upon review of a writ of habeas corpus, a federal court may only consider "those claims which the petitioner has presented to the state court in accordance with state procedural rules." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.1996), cert. denied, 517 U.S. 1215 (1996)(quoting Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir.1992)). This procedural bar

may be lifted if the petitioner can demonstrate either cause and actual prejudice, or that a miscarriage of justice will occur if the federal court does not review the merits of the petition. See McCall v. Benson, 114 F. 3d 754, 757 (8th Cir. 1997).

Petitioner's claim could be dismissed on the merits, even if it were not procedurally deficient. In determining whether the Jury reached a unanimous verdict, one does not examine arguments made at trial, nor the evidence adduced. Rather, one compares the Complaint with the instructions to the jury, to insure that the jury was properly instructed as to the elements of the alleged offense. Here, the Complaint charges in relevant part:

> On or about April 12, 1996 a known male individual who resided at the Hennepin County Adult Correctional Facility informed [Detective John Reed] that [Petitioner] had hired him and entered into an agreement with him to kill [Petitioner's] former girlfriend [R.A.].
>
> The note also states that the victim's new boyfriend should be killed.

We are provided with no basis upon which to conclude that the Instructions to the jury failed to state the necessary factual elements upon which the unanimous verdict was required to be reached as to the charges in the Complaint.

We also conclude that the state did not make the arguments attributed to it by Petitioner. In both the opening and closing statements the prosecutor argued the state's theory that R.A. was the intended victim of both Petitioner's conspiracies. (R. 7-11, 344-60). Thus contrary to Petitioner's assertion, the record evidence shows that from the onset of the prosecution of Petitioner, the state maintained that R.A. was the intended victim of both conspiracies.

Under Minnesota law, issues that are not raised and litigated in the postconviction court upon a petition for postconviction relief cannot be raised on appeal from a denial of a petition for postconviction relief. See, e.g. Hirt v. State, 309 Minn. 574, 244 N.W.2d 162, 162 (1976); Roby v. State, 547 N.W.2d 354 (Minn. 1996). In Petitioner's appeal of this issue to the Minnesota Court of Appeals, that court held that Petitioner waived the right to appeal the unanimity issue because he failed to raise the issue to the postconviction court. See State v. Fletcher, 1997 WL 76316, (Minn. Ct. App. February 25, 1997)(unpublished) opinion); see also (Petition for Postconviction Relief, R. 60). Because state procedural rules prevent Petitioner from raising a claim on appeal that he failed to the postconviction court, and because Petitioner has failed to plead the necessary arguments for lifting the procedural bar, the court cannot entertain his arguments on this issue.

**B. Juror Misconduct**

During closing arguments of Petitioner's trial, defense counsel learned that a juror ("Juror No. 1") was heard commenting on the evidence while at the hairdresser and stating her dislike for [Petitioner]. The incident was brought to the attention of the trial judge and Juror No. 1 was questioned in chambers. During questioning Juror No. 1 disclosed that she overheard another juror, ("Juror No. 2") make the comment "well it sounds pretty cut and dried to me" while in the elevator. The court dismissed Juror No. 1 and individually interviewed the remaining jurors about other possible misconduct. The court found that none of the remaining jurors recalled hearing Juror No. 2's comment, nor could they provide information regarding the context in which it was offered. (R. 405). During the interviews Juror No. 3 disclosed that he avoided listening to the dismissed juror, Juror No. 1 by standing apart from her during court recesses. After an investigation, the

court found no evidence of misconduct. However, the trial court conducted a hearing to evaluate the incident(s) of alleged misconduct and the impact thereof on the remaining jurors. The court determined there was a single incident of misconduct with Juror No. 1, and that the impact on the remaining jurors was not prejudicial. See Fletcher v. State of Minnesota, WL 1341392 *3 (Minn. Ct. App. Sept. 19, 2000).

Since, the issue of jury misconduct is factual in nature, the standard of review for this Court is whether the state court decision resulted in an unreasonable determination of the facts based on the evidence. 28 U.S.C. 2254(d)(2). When reviewing a state court decision, "a federal court...presumes that the state court's factual determinations are correct,"and that presumption "may be rebutted only by clear and convincing evidence." See Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). Additionally, because the question of jury impartiality centers on juror credibility, the trial court's resolution of the issue is entitled to special deference, and may only be overturned in the event of manifest error. See Pruett v. Norris, 153 F.3d 579, 587 (8th Cir. 1998).

Under Minnesota law the following factors are considered in reviewing a trial court's decision on jury misconduct: (1) the nature and the source of the prejudicial matter; (2) the number of jurors exposed to the misconduct; (3) the weight of evidence; and (4) the likelihood that curative measures were effective in reducing the prejudice. State v. Landro, 504 N.W.2d 741, 745 (Minn. 1993)(citation omitted).

Petitioner's allegation of pervasive juror misconduct is not substantiated by the record. When presented with the evidence of Juror No.1's misconduct the court took the proper curative measures and dismissed her from service. (R.367). Such measures were not warranted in response to Juror No. 2's comment because the court found that

there were no facts to indicate the comment was in reference to the trial. (R. 374). Moreover there is no evidence to suggest the comment was overheard by other jurors. Id. The trial court investigated the circumstances surrounding another juror's disclosure that he avoided standing by Juror No. 1, and determined that there existed no evidence of juror misconduct. (R. 379). The record supports the trial court's determination that the incident of alleged misconduct during Plainitff's trial and the impact thereof on the remaining jurors was not prejudicial. The state appellate court affirmed this decision. See State v. Fletcher, 1997 WL 76316*4-5 (Minn. Ct. App., February 25, 1997).

Petitioner has failed to present clear and convincing evidence that the trial court's decision to deny a mistrial based on juror misconduct constitutes manifest error.

### C. Sixth Amendment Violation

Shortly after beginning his sentence in the workhouse in April 1996 on a prior burglary conviction, Petitioner asked another inmate, Val Diggins, to help arrange to have his former girlfriend R.A. beaten and shot. See Complaint. The inmate alerted R.A., who contacted Petitioner's Hennepin County probation officer. The probation officer contacted Detective Reed of the Hennepin County Sheriff's Department. After speaking with Val Diggins and the workhouse staff, Detective Reed arranged for an undercover officer "Sam" to go to the workhouse and represent himself to Petitioner as a gang member who could assault R.A. At Diggins' urging, prior to meeting with the undercover officer, Petitioner drafted a "hit" contract which detailed the crime and the payment to be received. (Exhibit, 4). Petitioner met with Sam and their conversation was tape recorded and transcribed. (Exhibit, 1). During the trial, the state called Detective Reed to testify about his communications with Petitioner's probation officer and the workhouse staff. Upon cross-

examination, Detective Reed testified to his communications with Val Diggins. See State v. Fletcher, 1997 WL 76316 (Minn. Ct. App. September 19, 2000). No objections to this testimony was interposed.

The Sixth Amendment to the United States Constitution guarantees that "in all criminal prosecutions the accused shall enjoy the right to be confronted with the witnesses against him." U.S. Const. Amend. VI. When hearsay is admitted in a criminal trial, it implicates the Sixth Amendment because the accused does not have an opportunity to cross-examine the person who made the statement. State v. Aubid, 591 N.W.2d 472, 478 (Minn. 1999). The Supreme Court has "consistently held that the Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the [Confrontation] Clause." Idaho v. Wright, 497 U.S. 805, 813,(1990)(citing Pointer v. Texas, 380 U.S. 400, 407 (1965).

### 1. Testimony of Detective Reed

The state called Detective Reed as a witness to testify about his communications with the workhouse staff and Petitioner's probation officer. (R.44). The direct exam of Detective Reed did not include testimony concerning Diggins' comments. (R. 41, 43). However on cross-exam defense counsel directly questioned Detective Reed about Diggins' role in obtaining a written contract from Petitioner. (R. 55). Based on these facts Petitioner contends that Detective Reed's testimony constituted prejudicial hearsay and a violation of his Sixth Amendment right to confront a witness against him, Val Diggins.

Questions concerning the admissibility of evidence are "matters of state law," and are reviewable in federal habeas proceedings only when the alleged error infringes

upon specific constitutional protections or is so prejudicial that it amounts to a denial of due process. Nassar v. Sissel, 792 F.2d 119, 123 (8th Cir. 1986). Petitioner has the burden of proving the asserted error was of such magnitude or so prejudicial that it fatally flawed the trial. Manning-El v. Wyrick, 738 F.2d 321, 323 (8th Cir. 1984), cert. denied. 469 U.S. 919 (1985).

Petitioner contends that he was unfairly prejudiced by the testimony of Detective Reed. However Petitioner has failed to identify to the court those statements of Detective Reed's that resulted in harm. In absence of an appropriately specific reference to the record to identify the allegedly prejudicial testimony, this Court is without a factual basis upon which to evaluate Petitioner's claim.

Even if Petitioner had satisfied his burden of specifying the testimony in dispute, the record demonstrates that Detective Reed's testimony concerning Val Diggins' role in procuring the written contract is admissible under Minnesota law. The testimony complained of was elicited after cross-examination, in which defense counsel inquired as to communications between Detective Reed and Val Diggins. In so doing, defense counsel opened the door to further inquiry by the prosecutor on this topic. See Stearns v. Pluciniski, 482 N.W.2d 496, 499 (Minn. Ct. App. 1992), pet. for. rev. denied (Minn. April 29, 1992)("[b]y inquiring into a topic on cross-exam, appellant arguably opened the door to hearsay testimony on re-direct examination"); see also State v. Whaley, 389 N.W.2d 919, 926 (Minn. Ct. App. 1986)(upon re-examination a witness may be fully examined as to all matters brought out in cross examination). Any testimony of Detective Reed as to the statements of Diggins was occasioned by the defense and thus admissible against

Petitioner under state evidentiary law. See Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263 (8th Cir. 1993)(there can be no reversible error, where defendant has himself opened door and invited error).

**2. Written Contract**

Petitioner's argument that admission of his written "hit" contract constituted prejudicial hearsay is likewise without merit. The handwritten "hit" contract (Exhibit, 4) was drafted, signed and dated by Petitioner and offered as evidence against him. Handwriting expert, Karen Runyon testified that the handwritten "hit" contract positively matched Petitioner's writing. (R. 262). Under Minn. R. Evid. 801(d)(2)(A) a statement that is offered against a party and is the party's own statement is not hearsay. See State v. Palmer, 507 N.W.2d 865,867 (Minn. Ct. App. 1993)(citations omitted).

**D. Sufficiency of the Evidence**

At trial the state's primary evidence against Petitioner was a tape recorded conversation between Petitioner and the undercover officer "Sam" in which Petitioner commissions Sam to assault and/or murder R.A.[1] (Exhibit, 1). The state also relied on the "hit" contract drafted by Petitioner which details the nature of the proposed crime and the payment to be tendered. (Exhibit, 4). Both the conversation and the contract include Petitioner's request that Sam kill R.A. should some unforeseen circumstance so require.

---

[1] Specifically Petitioner requested that Sam beat R.A. with a baseball bat, break some of her bones, and cut the right side of her face with a razor-knife. See Exhibit, 4.

Petitioner argues that the evidence submitted by the state is insufficient to sustain his conviction for conspiracy to commit first degree murder because: (1) there was no agreement or intent by Petitioner to murder R.A. when R.A. was only to be killed if certain circumstances existed; (2) a conspiracy to kill R.A.' s boyfriend was inherently impossible because R.A. did not have a boyfriend; (3) there was insufficient evidence of an overt act to kill R.A., and; (4) Petitioner was entrapped, in that he was not predisposed to conspiring to commit murder.

Fact findings made by state court are "presumptively correct" and "presumptively binding on determinations in federal habeas proceedings when they are fairly supported by evidence in the record." Williams v. Armontrout, 912 F.2d 924,930(8th Cir. 1990). The court must examine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Blair-Bey v. Nix, 44 F.3d 711, 713 (8th Cir.1995) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Petitioner bears the burden of demonstrating the factual determinations arrived at in the state court proceedings are erroneous. Williams, 912 F.2d at 930.

**1. Intent to Kill**

Petitioner contends that he did not posses the requisite intent for first degree murder. Petitioner argues that there was no intent to murder R.A. because he specifically provided that she was only to be murdered in the event an unanticipated circumstance presented itself. Respondent disagrees arguing that although Petitioner's intent to kill was conditional it nonetheless satisfies the element of intent.

A conviction for first degree murder requires that the accused acted with the intent to effect the death of another. Minn. Stat. § 609.185 (2000). In rejecting Petitioner's claim that he lacked the requisite intent for murder, the postconviction court determined that Petitioner's conditional intent to kill satisfied the intent requirement of first degree murder. See Findings of Fact, Conclusions of Law, Order for Judgment and accompanying Memorandum dated September 28,1999 (herein "Order") at p. 7-11. This decision was affirmed by the Court of Appeals. Fletcher v. State, No. WL 13413292*3 (Minn. Ct. App., Sept. 19, 2000).

A "conditional intent" to commit murder is sufficient to satisfy the intent requirement for first degree murder. State v. Vandelinder, 481 N.W.2d 787, 789 (Mich. Ct. App. 1992) rev. denied. 487 N.W.2d 449(Mich. 1992). Although, there is no Minnesota case on point, the Michigan Court of Appeals addressed the issue of conditional intent in State v. Vandelinder. In Vandelinder the defendant offered to pay an undercover officer for the kidnaping, rape, and possible murder of his estranged wife. Id. at 788. The defendant however provided that should he and his wife reconcile, she was not to be killed. Id. Despite the contingency in his plan, the court held that the defendant nonetheless possessed the intent to kill. The court reasoned that a contingency in a plan to commit murder affects whether the victim will be murdered, but does not effect the solicitor's intent that the victim will be murdered. Id. at 789.

The state court did not err in finding sufficient evidence to demonstrate Petitioner possessed the requisite intent for the crime of conspiracy to commit first degree murder. Like the defendant's offer in Vandelinder which evidenced his intent to kill despite

the inclusion of a condition, Petitioner's written "hit" contract and his conversation with Sam also show that he possessed the intent to kill R.A. In the "hit" contract Petitioner writes:

> "If something was to go wrong by some unforseen event or person etc. Then by all means she [R.A.] should also be shot to death!" (Exhibit, 4).

Petitioner makes an similar request in his conversation with "Sam". Petitioner states in pertinent part:

> "Well, any, any unfor- reason seen that, car or somethin' comin', somebody comin', well, take her out..." (Exhibit, 1)

The state court correctly held Petitioner's conditional intent to kill R.A. satisfies the intent element for the crime of murder. The evidence demonstrates that Petitioner specifically intended that R.A. be killed should some unforeseen event occur. Like the circumstances in Vandelinder, the occurrence of the contingency set forth by Petitioner was completely out of Petitioner's control. Whether or not the unforeseen circumstances would have occurred, has no bearing on Petitioner's intent that R.A. be killed.

**2. Overt Act.**

The crime of conspiracy requires an agreement between two or more people to commit a crime and an overt act in furtherance of the conspiracy. Minn. Stat. § 609.175(2)(2000); State v. Kuhnau, 622 N.W.2d 552, 556 (Minn. 2001). The overt act may be the slightest action on the part of a conspirator. State v. St. Christopher, 232 N.W.2d 798, 804 (1975); see also State v. Willman, 296 Minn. 322, 322-23, 208 N.W.2d 300, 302

(1973) (evidence sufficient to show act in furtherance of conspiracy where defendant arranged for contract to murder wife and provided details to prospective killer to facilitate murder).

Petitioner argues that the evidence fails to demonstrate he made an overt act in furtherance of the conspiracy to kill R.A. Respondent disagrees arguing that Petitioner's act of drafting the "hit" contract was sufficient to constitute an overt act. The postconviction court rejected Petitioner's claim holding that the evidence of the "hit" contract and Petitioner's conversation with the undercover officer was more than sufficient to satisfy the overt act requirement. See Order at p.12.

The record does not contradict the state court's determination that Petitioner's conduct satisfies the overt act requirement. Petitioner drafted a contract in which he specified the conditions under which R.A. was to be killed. Petitioner met with "Sam" the undercover officer and discussed the details of the crime, providing him with information about the means of obtaining access to R.A., and the method of payment. See (Exhibit, 1). Petitioner specified the particular date for the crime to be committed and he offered details concerning R.A.'s appearance, the make and license plate number of her car, the name and address of her place of employment and her physical vulnerabilities. (See Exhibit, 1; Exhibit, 4). Petitioner did everything possible to ensure the success of his scheme. The written "hit" contract and the taped conversation evidence that Petitioner's conduct went beyond mere preparation to constitute overt acts in furtherance of the conspiracy to kill R.A.

### 3. Entrapment

Entrapment requires "that the defendant show that the government induced the crime." State v. Johnson, 511 N.W.2d 753, 754 (Minn. Ct. App..1994)(citation omitted), review denied (Minn. Apr. 19, 1994). Once the defendant makes a prima facie showing, the burden of persuasion shifts to the state "to prove beyond a reasonable doubt the lack of the defense." State v. Hage, 595 N.W.2d 200, 206 (Minn.1999)(citation omitted).

Petitioner argues that he was induced into conspiring to kill R.A. because Sam, the undercover officer badgered Petitioner into agreeing to the conspiracy. Respondent disagrees, arguing that prior to and during his involvement with Sam, Petitioner was pre-disposed to the crime. In response to Petitioner's argument the postconviction court held that the evidence of the "hit" contract, the conversation with Sam and Petitioner's prior record of assaults against R.A., clearly rebut Petitioner's contention that he was entrapped. See Order at 13-14.

The state court correctly held that Petitioner has failed to make a prima facie showing that he was induced into conspiring to kill R.A. Contrary to Petitioner's claims, the record demonstrates that he initiated contact with Val Diggins to solicit help with arranging the crime against R.A. Fletcher v. State of Minnesota, WL 1341392*8-10 (Minn. Ct. App., September 19, 2000). Two days prior to meeting with Sam, Petitioner drafted the "hit" contract detailing the proposed crime and the payment he would tender upon its completion. (Exhibit, 4). Upon meeting Sam Petitioner initiated the conversation with him steering it towards the proposed crime and how it was to be committed. (Exhibit, 1). Petitioner has failed to demonstrate he was induced to act by government involvement.

The state court correctly determined that the evidence in the present case was sufficient to demonstrate Petitioner conspired to kill R.A., committed an overt act in furtherance of the conspiracy and was not induced to do so by the government. As such the Petition for habeas relief should not be granted on the basis of insufficient evidence.

**E. Consecutive Sentence**

Petitioner was charged and convicted in the present case while serving a 48 month sentence for a first degree burglary conviction. Petitioner received a 180 month sentence for his conviction in the present case. The sentencing court held that Petitioner's 180 month sentence was to run consecutive to his prior 48 month sentence.

Petitioner argues that because the victim in both cases is R.A., concurrent sentences rather than consecutive sentences should have been imposed. Respondent answers that Petitioner's sentence was permissible under the sentencing guidelines. The postconviction court and Court of Appeals both held that Petitioner's consecutive sentence was permissible under the state sentencing guidelines.

To obtain habeas relief for a sentencing error, when the sentence imposed falls within statutory guidelines, a defendant must show either "a clear and convincing case of abuse of discretion" or "a patent violation of a constitutional guarantee." Wharton-El v. Nix, 38 F.3d 372, 375 (8th Cir. 1994)(citations omitted). Consecutive sentences are permissible in Minnesota where a current felony conviction for a crime against a person is sentenced consecutively to a prior felony sentence for a crime against a person which has not yet expired. Minn. Sent. Guidelines II.F. A defendant is not insulated from being held accountable for separate crimes, committed during separate behavioral incidents, simply

because the victim of both crimes is the same person. State v. Hanson, 572 N.W.2d 307, 310 (Minn. 1997).

The state court correctly determined Petitioner's sentence. Petitioner's prior conviction for first degree burglary is by definition a crime against a person. See Minn. Stat. Ann. 609.582(a-c)(2000). Petitioner had just begun serving his sentence for burglary when he received the present felony conviction for yet another crime against R.A. Petitioner's sentence is not only expressly authorized under the Minnesota Sentencing Guidelines, but the state Supreme Court has specifically authorized consecutive sentencing when separate crimes involve the same victim. See State v. Hanson, 572 N.W.2d 307, 310 (Minn. 1997). The Petition for habeas relief should not be granted on the basis of an impermissible sentence.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the Petition for a Writ of Habeas Corpus be denied and the Petition [Docket No. 1] be dismissed.

Dated: January 17, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **February 1, 2002** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.